***********
The Full Commission has reviewed the Deputy Commissioner's Opinion and Award based upon the record of the proceedings before the Deputy Commissioner and the briefs and oral argument before the Full Commission. The appealing party has shown good grounds to reconsider the evidence and having reviewed the competent evidence of record, the Full Commission hereby REVERSES the Opinion and Award of Deputy Commissioner Phillips.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission and the Commission has jurisdiction over the parties and the subject matter.
2. All parties have been correctly designated and there is no question as to misjoinder or nonjoinder of parties.
3. An employment relationship existed between plaintiff and employer-defendant at all times relevant hereto.
4. The above-named carrier-defendant was on the risk at the time of the alleged injury.
5. Plaintiff's average weekly wage for this claim is $566.44, yielding a compensation rate of $377.63.
 ***********
Based upon all the competent evidence of record, and all reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was a 54 year-old woman, who had completed the tenth grade. In addition, she had taken some business classes at a local college. Plaintiff started working for defendant-employer in a part-time position in January 1987 and eventually moved to full-time work in 1992. Her position as a sales representative included set-up, stocking, delivery and maintenance of tobacco products for wholesale customers in various counties in western North Carolina. Plaintiff's employment records, which defendants submitted at the hearing before the Deputy Commissioner, indicated that plaintiff received good evaluations and regular raises.
2. Over 20 years ago, plaintiff had fusion surgery on her neck, performed by Dr. Lawrence S. VanBlaricom. Although plaintiff had occasional pain from this surgery, she never missed any work due to neck problems.
3. On January 4, 1999, while working for defendant-employer, plaintiff slipped on ice and fell on both knees. Her knees immediately started to swell and required medical attention. Dr. Charles DePaolo, an orthopedic surgeon, performed two left knee surgeries on plaintiff, the first on February 25, 1999, and the second on May 21, 2001. Defendant admitted responsibility for this claim and is paying ongoing temporary total disability as a result of this accident.
4. While recovering from the May 21, 2001, knee surgery and receiving temporary total disability benefits, on September 21, 2001, defendant-employer asked plaintiff to meet with supervisors, Steve Pilkington and Paul Beckman, to assist them with a sales presentation. The presentation was scheduled for September 25, 2001, and was for one of plaintiff's largest wholesale accounts, Sprinkle Shelton, a wholesale grocery.
5. On September 24, 2001, the day preceding the presentation, plaintiff participated in a functional capacity examination at the request of defendants. Although plaintiff complained of neck pain during certain parts of the testing, her complaints were not long term and were not mentioned in the report summarizing the results of the functional capacity examination.
6. On September 25, 2001, plaintiff injured her neck while moving approximately 40 cases of cigarettes for the sales presentation. Each case weighed approximately 20 to 40 pounds. According to plaintiff's testimony at the hearing before the Deputy Commissioner, the boxes were stacked over her head, requiring her to pull them down. She was moving boxes for approximately two hours and testified that she developed pain in her shoulder that radiated up the back of her neck.
7. That same day, after moving the boxes, plaintiff told Cindy Fox and Carolyn Hensley, who worked in the office at Sprinkle Shelton, where the sales presentation was made, that she had a terrible headache and pain in her shoulder and neck. At the hearing before the Deputy Commissioner, Cindy Fox testified that prior to plaintiff's knee injury, she saw plaintiff two to three times each week when she replenished their tobacco inventory. Cindy Fox testified that plaintiff was a very good account representative. Cindy Fox also testified that she questioned whether plaintiff should be lifting and moving the boxes since she knew that plaintiff was out of work due to her workers' compensation injury related to her knees. After plaintiff completed her work at Sprinkle Shelton, Cindy Fox testified that plaintiff came to her, holding her neck and asked for Tylenol.
8. The following day, September 26, 2001, plaintiff told her supervisor, Mr. Pilkington, about the injury and her plans to see her physician, Dr. DePaolo, the orthopaedic surgeon who had performed her knee surgeries.
9. When plaintiff presented to Dr. DePaolo on September 26, 2001, he injected her neck with cortisone for her pain and referred her for an MRI, which was completed on October 31, 2001. Dr. DePaolo also referred plaintiff to a neurologist, Dr. Wesley Fowler.
10. Dr. Wesley Fowler first saw plaintiff on December 11, 2001. At that time, plaintiff completed an intake sheet, which was attached to Dr. Fowler's deposition transcript as an exhibit, indicating that she had injured her neck during a functional capacity examination on September 24, 2001, and at work on September 25, 2001.
11. On October 22, 2001, plaintiff presented to Dr. DePaolo for a follow-up visit. Dr. DePaolo's office notes state, "Sue returns for follow-up of her left knee and her neck. She seems to have hurt her neck that last time she had gone into work for a light duty job stocking chores. I think that her neck pain is related to her injury at work."
12. In his deposition taken on December 2, 2003, Dr. DePaolo testified that plaintiff's September 25, 2001, injury while lifting cigarette cases contributed to her neck symptoms. Specificially, Dr. DePaolo testified that plaintiff had a previous fusion and pre-existing arthritis in the neck and when she lifted the cigarette cases, she exacerbated a pre-existing condition with the injury.
13. On November 19, 2001, plaintiff again presented to Dr. DePaolo for increasing neck pain. At that time, Dr. DePaolo opined that plaintiff was close to maximum medical improvement and assigned a seven percent (7%) permanent partial disability rating to plaintiff's leg. Dr. DePaolo opined that plaintiff's neck problem was now more problematic than her knee.
14. Dr. DePaolo assigned job restrictions to plaintiff, which consisted of limited bending, stooping, twisting, no kneeling, squatting, limited stair and ladder climbing and sitting down for at least five minutes every hour. Dr. DePaolo considered these restrictions to be permanent.
15. Dr. Keith Maxwell, an orthopaedic surgeon, examined plaintiff on March 21, 2003. With regard to plaintiff's ability to return to work, Dr. Maxwell testified in his October 29, 2003, deposition that it would be problematic for plaintiff to return to her job with defendant-employer. Plaintiff's job required her to make sales calls and getting in and out of her car ten to fifteen times a day could aggravate her knee injury. Dr. Maxwell concurred with Dr. DePaolo's restrictions of limited bending, stooping, twisting, kneeling, squatting and climbing.
16. In his deposition on November 11, 2003, Dr. Fowler also testified that he did not know if plaintiff would be able to return to her job with defendant-employer.
17. Plaintiff also continued to see Dr. James Andrews, a board-certified internist, for her progressively worsening neck problems. Dr. Andrews, plaintiff's family physician, first began treating plaintiff on May 20, 1999.
18. An office note of Dr. Andrews dated November 2001, submitted as an exhibit at the hearing before the Deputy Commissioner, indicated that plaintiff presented for left knee and cervical neck pain, both of which were severe.
19. Plaintiff presented to Dr. Andrews for her second visit on November 27, 2001, at which time plaintiff expressed feelings of hopelessness. Plaintiff's father had died prior to her first visit with Dr. Andrews and, according to Dr. Andrews, plaintiff had experienced a normal grief reaction. After discussing possible medication for depression, plaintiff decided that it was not necessary at that time.
20. In his deposition on November 13, 2003, Dr. Andrews testified that on June 13, 2000, he prescribed Paxil for plaintiff's anxiety, as he was concerned about her heart palpitations and rapid heartbeat. Dr. Andrews also testified that plaintiff did not have any increase in psychosocial stressors, such as her job or pain, which may have contributed to her anxiety. Dr. Andrews opined that it is not uncommon to begin an anti-anxiety medication for a woman when she is experiencing heart palpitations and irregular heartbeats.
21. Dr. Andrews further testified in his deposition that plaintiff had expressed concern that she had cancer. Dr. Andrews opined that this could have played a part in plaintiff's feelings of anxiety and depression.
22. Dr. Andrews continued to treat plaintiff for anxiety and depression, trying different medications in order to alleviate some of plaintiff's side effects.
23. At the hearing before the Deputy Commissioner, plaintiff testified that Dr. Andrews prescribed Wellbutrin for depression but that neither Dr. Andrews nor Dr. DePaolo ever referred her for psychological counseling.
24. Although Dr. DePaolo treated plaintiff from January 26, 1999, through approximately October 22, 2001, Dr. DePaolo testified that plaintiff had never complained of depression or any sort of emotional or psychological problems.
25. Although plaintiff had experienced depression and anxiety and Dr. Andrews treated her for those symptoms, the Full Commission finds that any depression or anxiety plaintiff experienced was not caused by plaintiff's injuries by accident on January 4, 1999, and September 25, 2002.
26. As of the date of the Full Commission hearing, plaintiff had not returned to work with defendant-employer or any other employer and there is no evidence that any physician has released plaintiff to return to work.
 ***********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. As a direct result of the work assigned to plaintiff on January 4, 1999, plaintiff sustained an injury by accident to her knees, arising out of and in the course of her employment with defendant-employer, which resulted in an injury to her knees. N.C. Gen. Stat. § 97-2(6).
2. As a direct result of the work assigned to plaintiff on September 25, 2001, plaintiff sustained a specific traumatic incident to her cervical spine, arising out of and in the course of her employment with defendant-employer, which resulted in a disabling physical injury to her cervical spine. N.C. Gen. Stat. § 97-2(6).
3. As a result of plaintiff's admittedly compensable injuries by accident on January 4, 1999, and September 25, 2001, plaintiff is entitled to compensation for temporary total disability at the rate of $377.63 per week, less those amounts already paid to plaintiff, commencing January 4, 1999, and continuing until further order of the Industrial Commission. N.C. Gen. Stat. § 97-29.
4. As a result of plaintiff's compensable injuries by accident, plaintiff is entitled to have defendants pay all medical expenses incurred or to be incurred, including vocational rehabilitation services, for so long as such evaluations, examinations and treatments may be reasonably required to effect a cure, give relief and will tend to lessen plaintiff's disability. N.C. Gen. Stat. §§ 97-2(19) and 97-25.
5. Plaintiff failed to carry the burden of proof to establish that her depression and anxiety are causally related to her injuries by accident on January 4, 1999, and September 25, 2001. Accordingly, she is not entitled to benefits under the Workers' Compensation Act for depression or anxiety.Henry v. A.C. Lawrence Leather Co., 231 N.C. 477, 57 S.E.2d 760 (1950).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to a reasonable attorney's fee hereinafter approved, defendants shall pay compensation to plaintiff for temporary total disability at the rate of $377.63 per week, less those amounts already paid to plaintiff, from January 4, 1999, and continuing until further order of the Commission for plaintiff's compensable injuries of January 4, 1999, and September 25, 2001. Compensation that has accrued shall be paid in a lump sum.
2. Defendants shall pay for all of plaintiff's medical expenses incurred or to be incurred as a result of plaintiff's compensable injuries by accident on January 4, 1999, and September 25, 2001, for so long as such evaluations, examinations and treatments may be reasonably required to effect a cure or give relief and will tend to lessen the period of plaintiff's disability. Defendants shall provide vocational rehabilitation services to plaintiff and plaintiff shall cooperate with such efforts.
3. Plaintiff is not entitled to have the defendants provide medical treatment for anxiety or depression, which are not causally related to the injury by accident.
4. A reasonable attorney's fee of twenty-five percent (25%) of the compensation awarded to plaintiff under Paragraph 1 of this Award is approved for plaintiff's counsel and shall be deducted from the sum due plaintiff and shall be paid directly to plaintiff's counsel. Amounts accrued shall be paid in a lump sum and thereafter, every fourth check shall be mailed to plaintiff's counsel.
Defendants shall bear the costs.
This the ___ day of June 2005.
 S/_____________ PAMELA T. YOUNG COMMISSIONER
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/____________ BUCK LATTIMORE COMMISSIONER